IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 09-498-SLR ) |
| JONATHAN S. BERCK, AS TRUSTEE OF THE DANIEL BERMAN INSURANCE TRUST, DATED APRIL 25, 2007 | ) ) ) ) ) ) |
| Defendant. | ) ) |

David P. Primack, Esquire of Drinker Biddle & Reath LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jason P. Gosselin, Esquire and Jonathan D. Pavlovcak, Esquire of Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania.

John T. Dorsey, Esquire and Michele Sherretta Budicak, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, DE. Counsel for Defendant. Of Counsel: Julius A. Rousseau, III, Esquire, James M. Westerlind, Esquire, and Eric A. Biderman, Esquire of Herrick, Feinstein LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: June 29, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On July 8, 2009, plaintiff Sun Life Assurance Company ("Sun Life" or "plaintiff") filed the present action against defendant Jonathan S. Berck ("Berck" or "defendant"), trustee of the Daniel Berman Insurance Trust (the "Berman Trust"). (D.I. 1) Plaintiff alleges in its amended complaint, filed on September 29, 2009, that defendant, insurance producer Steven Lockwood ("Lockwood"), and Daniel Berman ("Berman") fraudulently procured a $4 million insurance policy (the "Berman Policy") on the life of Berman, which lacked any insurable interest. (D.I. 8 at ¶¶ 33-35)[1] Plaintiff seeks declaratory judgment that the policy is void ab initio, a retainment of some or all of the premiums paid under the Berman Policy, and damages. (Id. at 11) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Presently before this court is defendant's motion to dismiss for failure to state a claim. For the reasons that follow, the court grants in part and denies in part defendant's motion.

## II. BACKGROUND

Plaintiff is a Canadian corporation with its principal place of business in Wellesley Hills, Massachusetts. (D.I. 8 at ¶ 5) Defendant is a resident of New York who serves as trustee of the Berman Trust. (Id. at ¶ 6)

Beginning in April 2007, Lockwood, defendant, and others helped Berman, who was 77 years old at the time, apply for a life insurance policy. (Id. at ¶ 2) They allegedly sought the policy not for any legitimate insurance need but as a wagering contract to sell to stranger investors on the secondary life insurance market. (Id.) The

---

[1] For purposes of the motion to dismiss, the facts as alleged in plaintiff's amended complaint (D.I. 8) are assumed to be true.

amended complaint describes this stranger-originated life insurance ("STOLI") market as a phenomenon that has emerged over the last decade, comparable to unlawful wagering policies that have been around and disfavored by courts for centuries. (*Id.* at ¶¶ 9, 11) In a STOLI arrangement, speculators collaborate with an individual to obtain a life insurance policy in the name of that individual and then sell some or all of the death benefit payable upon the death of the insured to stranger investors. (*Id.* at ¶ 10) To maximize the expected rate of return, STOLI speculators often choose individuals who are over the age of 70 who have a net worth of at least $1 million to apply for the life insurance policies in which they will invest. (*Id.* at ¶ 13) The speculators will usually pay for the insured's related costs, such as application fees and premiums, and may even pay the insured some compensation upon issuance of the policy. (*Id.* at ¶ 15)

On or before May 7, 2007, plaintiff received a life insurance application from M&M Brokerage Services, Inc. ("M&M"), a company affiliated with Lockwood, requesting a $10 million policy on Berman's life. (*Id.* at ¶ 20) The application was signed by defendant (on behalf of the Berman Trust) and Berman and disclosed three pre-existing policies insuring Berman's life: a $2 million policy issued by Sun Life; a $1.5 million policy issued by Mutual of Omaha Insurance Company; and a $3 million policy issued by Security Life of Denver Insurance Company.[2] (*Id.* at ¶ 24) Both the application and a financial questionnaire, signed by Berman, indicated that the purpose of the insurance coverage was for "[an] Estate Plan" and for "Estate Protection;" an attached Broker's

---

[2] In February 2008, the $2 million Sun Life-issued policy was transferred to Life Partners, Inc., a company suspected of trading on the secondary life insurance market. (D.I. 8 at ¶ 25)

3

Report, signed by Lockwood, indicated the "information [in the application] [was] complete and true to the best of his knowledge." (*Id.* at ¶¶ 28-32)

The Berman Policy was issued on June 6, 2007 with a face value of $4 million and included an incontestability clause that read in part: "In the absence of fraud, after this Policy has been in force during the lifetime of the Insured for a period of two years from its Issue Date, [plaintiff] cannot contest it except for non-payment of Premiums." (D.I. 11, ex. A at 3, 14) The sole named owner and beneficiary was the Berman Trust, which was ostensibly created on April 25, 2007 under Delaware state law. (D.I. 8 at ¶¶ 6, 21, 34) The contract was signed in Wilmington, Delaware, and the policy was issued on a Delaware policy form and delivered to the Berman Trust.[3] (*Id.* at ¶¶ 22, 34)

Defendant and others allegedly concealed from plaintiff their true intent to transfer interest in the policy to stranger investors. (*Id.* at ¶¶ 19, 39) Plaintiff now believes that premium payments on the policy, including the initial premium of $187,960, were funded directly or indirectly by complete strangers as part of a secondary market transaction and that some or all of the beneficiary interest in the policy was sold or reassigned upon or after issuance of the policy.[4] (*Id.* at ¶¶ 36-37, 39) Therefore, plaintiff asserts that the Berman Policy, as a STOLI arrangement, was void at the time of procurement because its true nature as a wagering policy was concealed; Berman did not initiate its procurement on his own and neither he nor others ever intended for any policy benefits to be paid to his spouse, relatives, or any person having a substantial interest in Berman's life. (*Id.* at ¶¶ 33, 39)

---

[3] The Delaware address for the Berman Trust is the same as that used for other trusts that own Sun Life policies suspected of being illegally procured. (D.I. 8 at ¶ 23)

[4] In addition, Lockwood and Berck are suspected of procuring several other STOLI policies. (D.I. 8 at ¶¶ 18-19)

4

## III. STANDARD

In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it. For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The forum state's choice of law doctrine is included within its substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Under the law of Delaware, the law of the place where an insurance contract was made governs the obligations imposed by such contract.[5] *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949).

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, and attached exhibits. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide

---

[5] Both parties' briefs argue the issues under Delaware law and, assuming the facts regarding where the Berman Policy was made are not contested, Delaware law will govern. However, plaintiff has expressly reserved its right to later raise any choice of law issues. (D.I. 14 at 7 n.4)

the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

Plaintiff's amended complaint seeks a declaration that the Berman Policy is void ab initio for lack of any insurable interest, and the remainder of plaintiff's claims are contingent upon the ability to obtain that declaratory relief. (D.I. 8 at ¶¶ 43-44) Defendant's motion to dismiss argues that: (1) plaintiff is barred from asserting invalidity of the Berman Policy because the two-year contestability period has already expired; (2) even if plaintiff's claim is not barred by the incontestability clause, plaintiff has failed to sufficiently allege a lack of insurable interest; and (3) plaintiff cannot seek to both rescind the Berman Policy and retain premiums. (D.I. 11 at 4, 10, 19; D.I. 15 at 1, 5, 8) The court grants defendant's motion to dismiss in part because plaintiff cannot seek to both rescind the policy and retain premiums. However, plaintiff's pleadings fail to meet the pleading standards of *Iqbal*. Given the important public policy implicated by STOLI arrangements, the court will give plaintiff leave to amend its complaint, failure of which will result in dismissal.

### A. Incontestability Clause

Two-year incontestability clauses are required in life insurance contracts by Delaware law, which provides:

> There shall be a provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than 2 years after its date of issue, except for (1) nonpayment of premiums, and (2) at the insurer's option, provisions relating to benefits in the event of total and permanent disability and provisions granting additional benefits specifically against death by accident or accidental means.

18 Del. C. § 2908 (2010). The issue of whether a plaintiff is legally entitled to contest the validity of an insurance contract on grounds of fraud or misrepresentation after the two-year incontestability period is a matter of first impression in Delaware. No Delaware state or federal court has addressed this issue, and there appears to be no consensus on the issue from other jurisdictions with statutorily required incontestability clauses.[6] Plaintiff believes that, despite the expiration of the two-year contestability period, it should be allowed to challenge the validity of the policy because defendant misrepresented the existence of a legal insurable interest on Berman's policy application, which constitutes fraud.

While New York courts have held that passage of the contestability period bars the insurer from thereafter asserting the policyholder's lack of an insurable interest, other state jurisdictions have generally refused to enforce life insurance contracts in

---

[6] Forty-seven of the fifty states require, by statute, incontestability clauses in individual life insurance policies. However, only Arkansas, Kansas, and Missouri have statutory language explicitly excepting cases of misrepresentation or fraud from incontestability. See Ark. Code Ann. § 23-91-105 (2010); Kans. Stat. Ann. § 40-420 (2010); Mo. Ann. Stat. § 376.1124 (2010). South Carolina is the only state that explicitly bars fraud from being raised after the contestability period has expired. See S.C. Code Ann. § 38-63-220 (2009).

which the policyholder had no insurable interest in the insured. *Compare New England Mutual Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 270 (N.Y. 1989) (holding that, under New York law, insurer was barred from asserting invalidity of a policy because the statutory incontestability period had expired before the insured died), *with Paul Revere Life v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997) ("California law provides that a policy which is void ab initio may be contested at any time, even after the incontestability period has expired."), *and Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 689 (Md. Ct. App. 1988) (finding that incontestability clause does not apply to an insurance policy that is void ab initio because "[t]he invocation of an incontestability provision presupposes a basically valid contract.").

Defendant suggests that this court should follow *Caruso* and dismiss plaintiff's claim as barred by the Berman Policy's incontestability clause because Delaware and New York have similar statutory provisions regarding incontestability clauses.[7] (D.I. 11 at 7) *Compare* 18 Del. C. § 2908 (2010), *with* N.Y. Ins. Law § 3203[a][3] (2010) (effective Oct. 5, 2008).[8] Plaintiff argues that this court should follow other jurisdictions that have held an illegal contract is contestable even if the contestability period has expired. (D.I. 14 at 7) In the alternative, plaintiff argues that its claim is not barred

---

[7] *See Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 408 (3d Cir. 1949) (noting the similarity in language between the New York and Delaware insurance statutes and finding, absent any Delaware case law to the contrary, that the General Assembly of Delaware "intended that the Delaware statute should receive the legal construction and have the effect ascribed to such statutes by decisions similar to that of the Court of Appeals of New York.")

[8] The New York statute reads in part: "[T]he policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . . except in each case for nonpayment of premiums or violation of policy conditions relating to service in the armed forces. At the option of the insurer, provisions relating to benefits for total and permanent disability and additional benefits for accidental death may also be excepted." N.Y. Ins. Law § 3203[a][3] (2010).

because the incontestability clause in the Berman Policy contained language exempting cases of fraud: "**In the absence of fraud**, after this Policy has been in force during the lifetime of the insured for a period of two years . . . ." (emphasis added) (*Id.* at 8 n.5; D.I. 11, ex. A at 14) Both parties also make strong public policy arguments. Plaintiff argues that parties have the freedom to contract and that society's interest in preventing wagering contracts, a form of gambling, should outweigh its interest in enforcing an incontestability clause. *See Warnock v. Davis*, 104 U.S. 775, 779 (1881) ("[Wagering contracts] have a tendency to create a desire for the [death of the insured]. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."). Defendant asserts that enforcement of the incontestability clause, without an exception for fraud, is necessary to encourage insurers to investigate the insurable interest of its policyholders promptly.[9] *See Caruso*, 535 N.E.2d at 274-75.

## B. Insurable Interest

Assuming, arguendo, that plaintiff has the right to contest the validity of the Berman Policy outside the contestability period, the issue arises as to whether plaintiff has sufficiently pled facts alleging a lack of insurable interest. The court finds that plaintiff has failed to sufficiently plead any facts to state a claim that the Berman Policy was void ab initio for lack of any insurable interest.

Delaware law prohibits procurement of life insurance if the insured does not have an insurable interest. 18 Del. C. § 2704(a) (2010). An insurable interest is defined as

---

[9] Because of the holding that plaintiff has failed to sufficiently allege a claim for lack of insurable interest, *infra*, the court does not need to resolve at this time whether an exception for fraud or misrepresentation, or whether the language of the clause itself ("in the exception of fraud"), will allow plaintiff to challenge the Berman Policy's validity outside of the contestability period.

benefits that are payable to (1) "individuals related closely by blood or by law [who have a] substantial interest engendered by love and affection;" or (2) other individuals with "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue." 18 Del. C. § 2704(c) (2010). The insurable interest requirement emerged in order "to curtail use of insurance contracts as wagering contracts by distinguishing between contracts that sought to dampen the risk of actual future loss and those that instead sought to speculate on whether some future contingency would occur." *Sun Life Assurance Co. of Canada v. Paulson*, Civ. No. 07-3877, 2008 WL 451054, *2 n.4 (D. Minn. Feb. 15, 2008) (citation omitted). The Supreme Court has long ago explained that a wagering contract "gives the [policyholder] a sinister counter interest in having the life come to an end." *Grigsby v. Russell*, 222 U.S. 149, 154 (1911). As noted *supra*, as early as 1881, wagering contracts have been condemned as being against public policy. *Warnock*, 104 U.S. at 779; *see also, e.g.*, *Herman v. Provident Mut. Life Ins. Co. of Philadelphia* 886 F.2d 529, 534 (2d Cir. 1989); *North American Co. for Life and Health Ins. v. Lewis*, 535 F. Supp. 2d 755, 759 (S.D. Miss. 2008). However, it is well established that, so long as the insured does not take out the policy in the beginning as a mere cover for a wager, the beneficial interest may be legally transferred to an individual or entity without an insurable interest. *See, e.g.*, *Product Clearing v. Angel*, 530 F. Supp. 2d 646, 648 (S.D.N.Y. 2008) (citing *Grisby*, 222 U.S. at 154-56).

Neither the Third Circuit nor the Delaware Supreme Court has addressed what constitutes a lack of insurable interest at the time of procurement. No clear consensus has emerged across jurisdictions regarding this issue, and both parties' arguments rely

on non-binding precedent from other jurisdictions. Defendant asserts that a bilateral plan, scheme, or agreement with a stranger third party is required to establish a violation of the insurable interest requirement, while plaintiff argues that a unilateral intent is sufficient.

In support of his contention that a bilateral plan, scheme, or agreement is required, defendant urges this court to follow the District of Minnesota in *Paulson*, which involved substantially the same facts and issues as the present case. The plaintiff insurance company in *Paulson*[10] sought rescission of seven life insurance policies that were allegedly obtained with the intent to sell them to stranger third parties without an insurable interest after expiration of the contestability period. *Paulson*, 2008 WL 451054 at *1. Like the present case, the plaintiff in *Paulson* alleged that the stranger third parties paid the premiums on the insurance policies. *Id.* However, unlike the present case, the plaintiff in *Paulson* was further able to identify the stranger third parties in the STOLI arrangment and the dates that most of the policies were re-assigned to the third parties. *Id.* at *2. Nevertheless, the District Court for the District of Minnesota granted the defendants' motions to dismiss because the existence of a scheme, purpose, or agreement is determined by a **mutual** intent of the insured and the third party to avoid the prohibition on wagering contracts, and there was no evidence of any mutual intent at the time the policies in question were obtained. *Id.* at *2 ("[A unilateral] intent . . . is irrelevant without facts or allegations suggesting that a third party lacking an insurable interest intended, at the time [of procurement], to acquire the policy upon expiration of the contestability period."), *and subsequently related*, 2008 WL

---

[10] The plaintiff in *Paulson* was Sun Life Assurance Co. of Canada, the same plaintiff in the present case.

5120953, *6 (D. Minn. Sept. 3, 2008) (granting motion to dismiss to the remaining defendants for the same reasons).[11]

In its response brief, plaintiff in the present case identifies several decisions from other jurisdictions to support its contention that mere intent to transfer the interest in a policy to an unidentified third party at the time of procurement is sufficient to violate the statutory requirement for insurable interest. (D.I. 14 at 16-20) That which is most relevant to the present case is *Lincoln National Life Insurance Co. v. Calhoun*, 596 F. Supp. 2d 882, 890 (D.N.J. 2009), in which the District Court for the District of New Jersey denied the defendant insured's motion to dismiss in a case featuring facts similar to the present case and held that "issues of intent are crucial" in assessing an insurable interest challenge. *Calhoun* appears to be the only time a court has allowed a case involving an alleged STOLI policy with a completely unidentifiable stranger third party to proceed past a motion to dismiss. Even in *Calhoun*, however, it was alleged that the insured sold the beneficial interest in his insurance policy to profit off of the STOLI arrangement. *Id.* at 866. Other cases that plaintiff cites in support of its "intent" argument actually required an arrangement between the insured and an **identifiable** third party. *See, e.g., Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009) (interpreting Ohio law, where the third party purchaser's identity and intent were known); *Life Product Cleaning v. Angel*, 530 F. Supp. 2d 646 (S.D.N.Y. 2008)

---

[11] Defendant also relies on *First Penn-Pacific Life Ins. Co. v. Evans*, 313 F. App'x 633, 634-36 (4th Cir. 2009), in which the Fourth Circuit interpreted Arizona law to affirm the lower court's holding that the insured had a legal insurable interest when he obtained the policy and, thus, the policy was not a wagering contract. However, *Evans* is not directly comparable to the present case because no third party participated in the procurement of the policy in *Evans*.

(interpreting New York law, where the third party purchaser's identity and intent were known).

In support of its complaint for finding the Berman Policy lacked an insurable interest at inception, plaintiff has alleged, "upon information and belief," that: (1) Berman, Lockwood, and defendant "executed a plan, scheme and/or design" to illegally obtain a wagering policy on Berman's life (D.I. 8 at ¶ 2); (2) misrepresentations were made on the application for the Berman Policy, stating the policy was being purchased for the purpose of estate planning (*Id.* at ¶¶ 3, 27-33); (3) had plaintiff known about the misrepresentations on the policy application, it would not have issued the Berman Policy (*Id.* at ¶¶ 3, 35); (4) the purpose of establishing the Berman Trust, and any transfer of beneficial interest, was to conceal that Berman did not initiate, on his own, the procurement of the Berman Policy and never intended any of the benefits payable to be paid to anyone with an insurable interest (*Id.* at ¶ 39); and (5) the initial premium for the Berman Policy may have been funded directly or indirectly by stranger investors as part of a secondary market transaction rather than someone with an insurable interest (*Id.* at ¶ 37).

The cases cited by both parties indicate that lack of insurable interest is an issue that revolves around the time of policy procurement and, with the exception of the *Calhoun* decision, courts have required that the identity of the stranger third party in a STOLI case be identifiable in order to indicate, at a minimum, the existence of bilateral intent. Despite using the words "plan, scheme, and/or design" in its amended complaint, plaintiff fails to allege any indication of a bilateral nature to the plan, scheme, or design.

13

Put another way, there is no indication that any particular third party stranger was aware of the alleged STOLI arrangement. Moreover, plaintiff's allegation of "a plan, scheme and/or design," without more, is merely a "formulaic recitation of the elements of a cause of action" and is insufficient to provide grounds for entitlement to relief. See Twombly, 550 U.S. at 545. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 545. Absent a lack of insurable interest at **inception**, it is legal for a policyholder to transfer beneficial interest in a policy. The complaint does not allege any facts beyond a speculative level to support an intent, at the time of procurement, to transfer the Berman Policy that would make the policy illegal for lack of an insurable interest. Therefore, plaintiff's allegations do nothing more than describe in conclusory terms a claim in contravention of *Iqbal* plausibility standards. If plaintiff's allegations, as pled, were to be deemed sufficient, it would allow insurers to legally challenge any life policy insuring elderly, wealthy individuals as suspected STOLI schemes.

### C. Retaining Premiums While Seeking Rescission

In the event the Berman Policy is rescinded for being void ab initio, plaintiff seeks to retain some or all of the premiums it obtained from the policy. Plaintiff asserts that Delaware law does not require an insurer to return premiums paid thereon in order to have a policy declared void, while defendant asserts that an election of remedies prevents an insurer from both rescinding a policy and retaining the premiums. (D.I. 11 at 19-20; D.I. 14 at 25-27; D.I. 15 at 8-11)

The court agrees with defendant on this issue. This court has previously held that rescission of benefit increases on a life insurance policy requires the insurer to refund premiums. *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 890 (D. Del. 1994). Other Delaware courts have also held that rescission is an equity claim that requires all parties to be returned to the status quo. *See Strassburger v. Early*, 752 A.2d 557, 578 (Del. Ch. 2000) (returning the parties "to the position they occupied before the challenged transaction"); *see also Sannini v. Casscells*, 401 A.2d 927, 927 (Del. 1979) (finding that election of remedies in equity precludes inconsistent judgments). Plaintiff cites Delaware cases purportedly supporting its position that it can retain premiums on a rescinded policy, but a closer inspection reveals that those courts allowed damages to be awarded, not premiums to be retained. *See Creative Research Manufacturing*, Civ. No. 1211-A, 2007 WL 286735, *10 (Del. Ch. Jan. 30, 2007) (awarding "operating costs and out-of-pocket expenses" incurred by plaintiff in equitable rescission action); *Martin Newark Dealership, Inc. v. Grube*, Civ. No. 97-11-064, 1998 WL 1557485, *4 (Del. Ct. Com. Pl. Dec. 22, 1998) (allowing a plaintiff to be awarded "money or other property of which it has been deprived."). "The payment . . . [of] premiums is the consideration for which the insurer agrees to assume the risk specified in the policy." Couch on Insurance § 69:2 (3d ed. 1996). If an insurance company could retain premiums while also obtaining rescission of a policy, it would have the undesirable effect of incentivizing insurance companies to bring rescission suits as late as possible, as they continue to collect premiums at no actual risk.

Therefore, although plaintiff may properly seek damages for expenses incurred as a result of defendant's alleged behavior,[12] the court dismisses plaintiff's claim seeking retainment of premiums in light of the fact that it also seeks to rescind the Berman Policy. In an equitable action such as this, plaintiff may not have it both ways.

## V. CONCLUSION

Plaintiff has not sufficiently pled facts to state a claim for declaratory judgment that the Berman Policy is void ab initio due to a lack of insurable interest. However, because STOLI policies are strongly condemned as being against public policy, the court will give plaintiff the opportunity to supplement its complaint. Failure to amend will result in dismissal of the case. The court grants defendant's motion to dismiss regarding plaintiff's claim to retain premiums on the Berman Policy. An appropriate order shall issue.

---

[12] Plaintiff does in fact seek an award of damages for expending money and resources in connection with "the costs of underwriting, issuance, payment, commissions, administration, service, and investigations associated with the Berman Policy." (D.I. 8 at ¶ 44)