# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 09-498-SLR ) |
| JONATHAN S. BERCK INDIVIDUALLY AND AS TRUSTEE OF THE DANIEL BERMAN INSURANCE TRUST, DATED APRIL 25, 2007, and STEVEN LOCKWOOD, | ) ) ) ) ) ) |
| Defendants. | ) ) |

David P. Primack, Esquire of Drinker Biddle & Reath LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jason P. Gosselin, Esquire and Jonathan D. Pavlovcak, Esquire of Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania.

John T. Dorsey, Esquire and Michele Sherretta Budicak, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, DE. Counsel for Defendants. Of Counsel: Julius A. Rousseau, III, Esquire, James M. Westerlind, Esquire, and Eric A. Biderman, Esquire of Herrick, Feinstein LLP, New York, New York.

## MEMORANDUM OPINION

Dated: March 16, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On July 8, 2009, plaintiff Sun Life Assurance Company ("Sun Life" or "plaintiff")
filed the present action against defendant Jonathan S. Berck ("Berck"), trustee of the
Daniel Berman Insurance Trust (the "Berman Trust"). (D.I. 1) Plaintiff alleges in its
second amended complaint, filed on June 12, 2010, that defendants Steven Lockwood
("Lockwood"), and Daniel Berman ("Berman") fraudulently procured a $4 million
insurance policy (the "Berman Policy") on the life of Berman, which policy lacked any
insurable interest. (D.I. 28 at ¶¶ 34-35)[1] Plaintiff seeks declaratory judgment that the
policy is void ab initio, a retainment of some or all of the premiums paid under the
Berman Policy, and damages. (Id. at 14-16) The court has jurisdiction over this matter
pursuant to 28 U.S.C. § 1332(a)(1). The court granted defendants' motion to dismiss
plaintiff's amended complaint for failure to state a claim on June 30, 2010, with leave to
amend. (D.I. 26) Plaintiff filed a second amended complaint on July 12, 2010. (D.I. 28)
Presently before this court are defendants' motions (D.I. 35; D.I 45; D.I. 47) to dismiss
plaintiff's second amended complaint for failure to state a claim. For the reasons that
follow, the court denies defendants' motions.

## II. BACKGROUND

Plaintiff is a Canadian corporation with its principal place of business in Wellesley
Hills, Massachusetts. (D.I. 28 at ¶ 6) Berck is a resident of New York who serves as
trustee of the Berman Trust. (Id. at ¶ 7) Lockwood is a resident of New York who

---

[1] For purposes of the motion to dismiss, the facts as alleged in plaintiff's
amended complaint (D.I. 28) are assumed to be true.

serves as an insurance broker and was the insurance broker for the Berman Policy. (*Id.* at ¶ 8)

Beginning in April 2007, Lockwood, Berck, and others helped Berman, who was 77 years old at the time, apply for a life insurance policy. (*Id.* at ¶ 23-27) They allegedly sought the policy not for any legitimate insurance need but as a wagering contract to sell to stranger investors on the secondary life insurance market. (*Id.*) The amended complaint describes this stranger-originated life insurance ("STOLI") market as a phenomenon that has emerged over the last decade, comparable to unlawful wagering policies that have been around and disfavored by courts for centuries. (*Id.* at ¶¶ 11, 13) In a STOLI arrangement, speculators collaborate with an individual to obtain a life insurance policy in the name of that individual and then sell some or all of the death benefit payable upon the death of the insured to stranger investors. (*Id.* at ¶ 12) To maximize the expected rate of return, STOLI speculators often choose individuals who are over the age of 70 who have a net worth of at least $1 million to apply for the life insurance policies in which they will invest. (*Id.* at ¶ 15) The speculators will usually pay for the insured's related costs, such as application fees and premiums, and may even pay the insured some compensation upon issuance of the policy. (*Id.* at ¶ 17)

On or before May 7, 2007, plaintiff received a life insurance application from M&M Brokerage Services, Inc. ("M&M"), a company affiliated with Lockwood, requesting a $10 million policy on Berman's life. (*Id.* at ¶ 23) Both the application and a financial questionnaire, signed by Berman, indicated that the purpose of the insurance coverage was for "[an] Estate Plan" and for "Estate Protection;" an attached Broker's Report, signed by Lockwood, indicated the "information [in the application] [was] complete and

3

true to the best of his knowledge." (*Id.* at ¶¶ 29-32) In a letter dated May 23, 2007 and sent to Sun Life in support of the Berman Application, Lockwood advised Sun Life that he had been working with Berman and his accountants over the last six months and that Berman needed an additional $10 million in life insurance for estate tax planning purposes. (*Id.* at ¶ 33)

The Berman Policy issued on June 6, 2007 with a face value of $4 million and included an incontestability clause that read in part: "In the absence of fraud, after this Policy has been in force during the lifetime of the Insured for a period of two years from its Issue Date, [plaintiff] cannot contest it except for non-payment of Premiums." (D.I. 11, ex. A at 3, 14) The sole named owner and beneficiary was the Berman Trust, which was ostensibly created on April 25, 2007 under Delaware state law. (D.I. 28 at ¶ 24) The contract was signed in Wilmington, Delaware, and the policy was issued on a Delaware policy form and delivered to the Berman Trust.[2]  (*Id.* at ¶ 25)

Defendant and others allegedly concealed from plaintiff their true intent to transfer interest in the policy to stranger investors. (*Id.* at ¶ 36) Plaintiff now believes that premium payments on the policy, including the initial premium of $187,960, were funded directly or indirectly by complete strangers as part of a secondary market transaction and that some or all of the beneficiary interest in the policy was sold or reassigned upon or after issuance of the policy. (*Id.* at ¶ 37, 40) Therefore, plaintiff asserts that the Berman Policy, as a STOLI arrangement, was void at the time of procurement because its true nature as a wagering policy was concealed; Berman did

---

[2] The Delaware address for the Berman Trust is the same as that used for other trusts that own Sun Life policies suspected of being illegally procured. (D.I. 28 at ¶ 26)

4

not initiate its procurement on his own and neither he nor others ever intended for any policy benefits to be paid to his spouse, relatives, or any person having a substantial interest in his life. (*Id.* at ¶ 34)

## III. STANDARD

In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it. For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The forum state's choice of law doctrine is included within its substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Under the law of Delaware, the law of the place where an insurance contract was made governs the obligations imposed by such contract.[3] *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949).

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, and attached exhibits. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

---

[3] Both parties' briefs argue the issues under Delaware law and, assuming the facts regarding where the Berman Policy was made are not contested, Delaware law will govern. However, plaintiff has expressly reserved its right to later raise any choice of law issues. (D.I. 38 at 10 n.9)

5

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

Plaintiff's amended complaint seeks a declaration that the Berman Policy is void *ab initio* for lack of any insurable interest, and the remainder of plaintiff's claims are contingent upon the ability to obtain that declaratory relief. (D.I. 28 at ¶¶ 49-53) In their motion to dismiss, defendants argue that: (1) plaintiff is barred from asserting invalidity of the Berman Policy because the two-year contestability period has already expired; (2) even if plaintiff's claim is not barred by the incontestability clause, plaintiff has failed to

6

sufficiently allege a lack of insurable interest; and (3) plaintiff's fraud claim against Berck

in his capacity as a trustee must be dismissed. (D.I. 36 at 5, 11, 19)

## A. Incontestability Clause

Two-year incontestability clauses are required in life insurance contracts by

Delaware law, which provides:

> There shall be a provision that the policy shall be incontestable after it has
> been in force during the lifetime of the insured for a period of not more
> than 2 years after its date of issue, except for (1) nonpayment of
> premiums, and (2) at the insurer's option, provisions relating to benefits in
> the event of total and permanent disability and provisions granting
> additional benefits specifically against death by accident or accidental
> means.

18 Del. C. § 2908 (2010). The issue of whether a plaintiff is legally entitled to contest

the validity of an insurance contract on grounds of fraud or misrepresentation after the

two-year incontestability period is a matter of first impression in Delaware. No Delaware

state or federal court has addressed this issue, and there appears to be no consensus

on the issue from other jurisdictions with statutorily required incontestability clauses.[4]

Plaintiff asserts that, despite the expiration of the two-year contestability period, it

should be allowed to challenge the validity of the policy because defendants

misrepresented the existence of a legal insurable interest on Berman's policy

application, which constitutes fraud.

---

[4] Forty-seven of the fifty states require, by statute, incontestability clauses in
individual life insurance policies. However, only Arkansas, Kansas, and Missouri have
statutory language explicitly excepting cases of misrepresentation or fraud from
incontestability. See Ark. Code Ann. § 23-91-105 (2010); Kans. Stat. Ann. § 40-420
(2010); Mo. Ann. Stat. § 376.1124 (2010). South Carolina is the only state that explicitly
bars fraud from being raised after the contestability period has expired. See S.C. Code
Ann. § 38-63-220 (2009).

7

While New York courts have held that passage of the contestability period bars the insurer from thereafter asserting the policyholder's lack of an insurable interest, other courts have generally refused to enforce life insurance contracts in which the policyholder had no insurable interest in the insured. *Compare New England Mutual Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 270 (N.Y. 1989) (holding that, under New York law, insurer was barred from asserting invalidity of a policy because the statutory incontestability period had expired before the insured died), *with Paul Revere Life v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997) ("California law provides that a policy which is void ab initio may be contested at any time, even after the incontestability period has expired."), *and Beard v. Am. Agency Life Ins.* Co., 550 A.2d 677, 689 (Md. Ct. App. 1988) (finding that incontestability clause does not apply to an insurance policy that is void ab initio because "[t]he invocation of an incontestability provision presupposes a basically valid contract.").

Defendants suggest that this court should follow *Caruso* and dismiss plaintiff's claim as barred by the Berman Policy's incontestability clause because Delaware and New York have similar statutory provisions regarding incontestability clauses.[5] (D.I. 36 at 11) *Compare* 18 Del. C. § 2908 (2010), *with* N.Y. Ins. Law § 3203[a][3] (2010) (effective Oct. 5, 2008).[6] Plaintiff argues that this court should follow other jurisdictions

---

[5] *See Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 408 (3d Cir. 1949) (noting the similarity in language between the New York and Delaware insurance statutes and finding, absent any Delaware case law to the contrary, that the General Assembly of Delaware "intended that the Delaware statute should receive the legal construction and have the effect ascribed to such statutes by decisions similar to that of the Court of Appeals of New York.").

[6] The New York statute reads in part: "[T]he policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . . except in each case for nonpayment of premiums or violation of policy conditions relating to service in the armed forces. At the option of the insurer,

8

that have held an illegal contract is contestable even if the contestability period has expired. (D.I. 38 at 17) In the alternative, plaintiff argues that its claim is not barred because the incontestability clause in the Berman Policy contained language exempting cases of fraud: "**In the absence of fraud**, after this Policy has been in force during the lifetime of the insured for a period of two years . . . ." (emphasis added) (*Id.* at 8; D.I. 36, ex. A at 14)

Having considered the parties' arguments,[7] the court concludes that an incontestability clause does not bar a challenge to an insurance policy that was void *ab initio*, especially given the language included in the Berman Policy. Public policy and the majority of case law support such a finding. Recently, even New York has begun to re-evaluate its position on incontestability clauses in STOLI cases. Indeed, the District Court for the Southern District of New York recognized that "there is . . . substantial ground for difference of opinion on the application of New York Insurance Law to [STOLI] arrangements of this type." *Kramer v. Lockwood Pension Servs. Inc.*, 653 F. Supp. 2d 354, 398 (S.D.N.Y. 2009). Defendants' motions are denied in this regard.

## B. Insurable Interest

---

provisions relating to benefits for total and permanent disability and additional benefits for accidental death may also be excepted." N.Y. Ins. Law § 3203[a][3] (2010).

[7]Plaintiff argues that parties have the freedom to contract and that society's interest in preventing wagering contracts, a form of gambling, should outweigh its interest in enforcing an incontestability clause. *See Warnock v. Davis*, 104 U.S. 775, 779 (1881) ("[Wagering contracts] have a tendency to create a desire for the [death of the insured]. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."). Defendants assert that enforcement of the incontestability clause, without an exception for fraud, is necessary to encourage insurers to investigate the insurable interest of its policyholders promptly. *See Caruso*, 535 N.E.2d at 274-75.

9

Given that plaintiff has the right to contest the validity of the Berman Policy outside the contestability period, the issue remains as to whether plaintiff has sufficiently pled facts alleging a lack of insurable interest. The court finds that plaintiff has sufficiently pled that the Berman Policy was void ab initio for lack of any insurable interest.

Delaware law prohibits procurement of life insurance if the insured does not have an insurable interest. 18 Del. C. § 2704(a) (2010). An insurable interest is defined as benefits that are payable to (1) "individuals related closely by blood or by law [who have a] substantial interest engendered by love and affection;" or (2) other individuals with "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue." 18 Del. C. § 2704(c) (2010). The insurable interest requirement emerged in order "to curtail use of insurance contracts as wagering contracts by distinguishing between contracts that sought to dampen the risk of actual future loss and those that instead sought to speculate on whether some future contingency would occur." *Sun Life Assurance Co. of Canada v. Paulson*, Civ. No. 07-3877, 2008 WL 451054, *2 n.4 (D. Minn. Feb. 15, 2008) (citation omitted). The Supreme Court has long ago explained that a wagering contract "gives the [policyholder] a sinister counter interest in having the life come to an end." *Grigsby v. Russell*, 222 U.S. 149, 154 (1911). As noted *supra*, as early as 1881, wagering contracts have been condemned as being against public policy. *Warnock*, 104 U.S. at 779; *see also, e.g., Herman v. Provident Mut. Life Ins. Co. of Philadelphia* 886 F.2d 529, 534 (2d Cir. 1989); *North American Co. for Life and Health Ins. v. Lewis*, 535 F. Supp. 2d 755, 759 (S.D. Miss. 2008). However, it is well established that, so

long as the insured does not take out the policy in the beginning as a mere cover for a wager, the beneficial interest may be legally transferred to an individual or entity without an insurable interest. *See, e.g., Product Clearing v. Angel*, 530 F. Supp. 2d 646, 648 (S.D.N.Y. 2008) (citing *Grisby*, 222 U.S. at 154-56).

Neither the Third Circuit nor the Delaware Supreme Court has addressed what constitutes a lack of insurable interest at the time of procurement. No clear consensus has emerged across jurisdictions regarding this issue, and both parties' arguments rely on non-binding precedent from other jurisdictions. Defendants assert that a bilateral plan, scheme, or agreement with a stranger third party is required to establish a violation of the insurable interest requirement, while plaintiff argues that a unilateral intent is sufficient.

In support of their contention that a bilateral plan, scheme, or agreement is required, defendants urge this court to follow the District of Minnesota in *Paulson*, which involved substantially the same facts and issues as the present case. The plaintiff insurance company in *Paulson*[8] sought rescission of seven life insurance policies that were allegedly obtained with the intent to sell them to stranger third parties without an insurable interest after expiration of the contestability period. *Paulson*, 2008 WL 451054 at *1. Like the present case, the plaintiff in *Paulson* alleged that the stranger third parties paid the premiums on the insurance policies. *Id.* However, unlike the present case, the plaintiff in *Paulson* was further able to identify the stranger third parties in the STOLI arrangment and the dates that most of the policies were re-assigned to the third parties. *Id.* at *2. Nevertheless, the District Court for the District

---

[8] The plaintiff in *Paulson* was Sun Life Assurance Co. of Canada, the same plaintiff in the present case.

11

of Minnesota granted the defendants' motions to dismiss because the existence of a scheme, purpose, or agreement is determined by a mutual intent of the insured and the third party to avoid the prohibition on wagering contracts, and there was no evidence of any mutual intent at the time the policies in question were obtained. *Id.* at \*2 ("[A unilateral] intent . . . is irrelevant without facts or allegations suggesting that a third party lacking an insurable interest intended, at the time [of procurement], to acquire the policy upon expiration of the contestability period."), *and subsequently related*, 2008 WL 5120953, \*6 (D. Minn. Sept. 3, 2008) (granting motion to dismiss to the remaining defendants for the same reasons).[9]

In its response brief, plaintiff in the present case identifies several decisions from other jurisdictions to support its contention that mere intent to transfer the interest in a policy to an unidentified third party at the time of procurement is sufficient to violate the statutory requirement for insurable interest. (D.I. 14 at 16-20) That which is most relevant to the present case is *Lincoln National Life Insurance Co. v. Calhoun*, 596 F. Supp. 2d 882, 890 (D.N.J. 2009), in which the District Court for the District of New Jersey denied the defendant insured's motion to dismiss in a case featuring facts similar to the present case and held that "issues of intent are crucial" in assessing an insurable interest challenge. *Calhoun* appears to be the only time a court has allowed a case involving an alleged STOLI policy with a completely unidentifiable stranger third party to proceed past a motion to dismiss. Even in *Calhoun*, however, it was alleged that the

---

[9] Defendant also relies on *First Penn-Pacific Life Ins. Co. v. Evans*, 313 F. App'x 633, 634-36 (4th Cir. 2009), in which the Fourth Circuit interpreted Arizona law to affirm the lower court's holding that the insured had a legal insurable interest when he obtained the policy and, thus, the policy was not a wagering contract. However, *Evans* is not directly comparable to the present case because no third party participated in the procurement of the policy in *Evans*.

12

insured sold the beneficial interest in his insurance policy to profit off of the STOLI arrangement. *Id.* at 866. Other cases that plaintiff cites in support of its "intent" argument actually required an arrangement between the insured and an identifiable third party. *See, e.g., Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009) (interpreting Ohio law, where the third party purchaser's identity and intent were known); *Life Product Cleaning v. Angel*, 530 F. Supp. 2d 646, 649-50 (S.D.N.Y. 2008) (interpreting New York law, where the third party purchaser's identity and intent were known).

In support of its complaint for finding the Berman Policy lacked an insurable interest at inception, plaintiff has alleged, "upon information and belief," that: (1) Berman, Lockwood, and Berck "acquired the Berman Policy, and at that time, had a plan, agreement and intention to sell the beneficial interest in it on the secondary life insurance market" (D.I. 28 at ¶ 2); (2) the trust that owns the Berman Policy includes language that states that the purpose of its creation was to effectuate the transfer of the Berman Policy's beneficial interest to stranger investors (*id.*); (3) "the beneficial interest in the Berman Policy was not only sold, but the sale [] was completed at or near the time of the policy issuance (meaning the agreement in connection with that sale was necessarily in place prior to policy issuance)" (*id.*); (4) misrepresentations were made on the application for the Berman Policy, stating the policy was being purchased for the purpose of estate planning (*id.* at ¶¶ 4, 28-34); (5) had plaintiff known about the misrepresentations on the policy application, it would not have issued the Berman Policy (*id.* at ¶ 56); (6) the purpose of establishing the Berman Trust, and any transfer of beneficial interest, was to conceal that Berman did not initiate, on his own, the

13

procurement of the Berman Policy and never intended any of the benefits payable to be paid to anyone with an insurable interest (*id.* at ¶ 46); and (7) the initial premium for the Berman Policy may have been funded directly or indirectly by stranger investors as part of a secondary market transaction rather than someone with an insurable interest. (*Id.* at ¶¶ 37-38).

The cases cited by parties indicate that lack of insurable interest is an issue that revolves around the time of policy procurement. Assuming that plaintiff's allegations are true, "plaintiff has alleged that there was some [] third party investor involved in the STOLI scheme prior to submission of the Application and that, if the facts are true, such party may be identifiable during discovery." *Lincoln Nat. Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust,* Civ. No. 09-506, 2010 WL 2898315, at *8 (D. Del. Jul. 20, 2010). *See also Lincoln Nat. Life Ins. Co. v. Schwartz,* Civ. No. 09-3361, 2010 WL 3283550, at *8 (D.N.J. Aug. 18, 2010) ("discovery [is] essential to determining if the defendant had arranged to sell the policy to an individual or individuals with no insurable interest in the defendant's life at the time the policy application was submitted."). Although plaintiff did not specifically identify the third party with whom defendants had an agreement to sell the Berman Policy at the time of its procurement, plaintiff did plead that such a party exists, and precedent compels the court to allow plaintiff to obtain discovery on the issue. Therefore, defendants' motions are denied in this regard.

### C. Plaintiff's Fraud Claim Against Berck in his Capacity as a Trustee

Defendants' argument for dismissing plaintiff's fraud claim against Berck in his capacity as a trustee consists of a single paragraph with no references to statutes or case law. Because the court has already found that plaintiff "may properly seek damages for expenses incurred as a result of defendants' alleged behavior," defendants' motions are denied in this regard.[10]

## V. CONCLUSION

For the reasons stated above, defendants' motions to dismiss plaintiff's second amended complaint for failure to state a claim are denied. An appropriate order shall issue.

---

[10] Plaintiff's motion to strike Lockwood's reply brief (D.I. 55) is denied as moot.